## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **RICHARD DIPAOLO,** | : |
| | : |
| | : |
| *Plaintiff,* | : |
| | : |
| **v.** | : CIVIL ACTION |
| | : |
| | : No. |
| **PENNSYLVANIA OFFICE OF THE** | : |
| **ATTORNEY GENERAL,** | : |
| | : |
| | : |
| | : |
| *Defendant.* | : |
| | : |

## COMPLAINT

Plaintiff Richard DiPaolo, through his attorneys, van der Veen, Hartshorn & Levin, asserts the following Complaint against Defendant Pennsylvania Office of Attorney General for violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12111, *et seq*., and the Pennsylvania Human Relations Act, 42 P.S. §951, *et seq*.

## PARTIES

1.      Plaintiff Richard DiPaolo (hereinafter, "Plaintiff") is and was at all relevant times an adult residing within Montgomery County, Pennsylvania.

2.      Defendant Pennsylvania Office of the Attorney General (hereinafter, "OAG" or "Defendant") is division of the Commonwealth.

## JURISDICTION AND VENUE

3.      This action is brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12111, *et seq*.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory provisions.

1

4.      Jurisdiction lies over state law claims based on the principals of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

5.      Venue is proper pursuant to 28 U.S.C. §1391(d) given that the events giving rise to this Complaint occurred within the confines of the Eastern District of Pennsylvania.

## FACTS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.      Plaintiff formerly worked as a police officer for the Philadelphia Police Department (hereinafter, "PPD")

7.      In or around February 2022, Plaintiff sustained a severe injury while acting as a law enforcement officer arresting a carjacker.  Plaintiff had two surgeries on his leg and extensive physical therapy to address this injury.

8.      Plaintiff was separated from the Philadelphia Police Department, against his wishes, in August 2024 due to his disability and granted a disability pension, Civil Service Regulation 32 (commonly referred to as a "32" pension).

9.      Looking to continue his career in law enforcement, Plaintiff began applying to investigative roles at the OAG.

10.     On May 14, 2025, Plaintiff interviewed for a position with the OAG involving fraud investigations.  Plaintiff felt he made a positive impression upon the interview panel, and at the conclusion of the interview, one member, Assistant Deputy Chief John Malandra (hereinafter, "Malandra"), asked whether Plaintiff would allow him to recommend him for other positions if he was not selected for the current role.

11.     Plaintiff did not receive the fraud investigation position, but Malandra stayed true to his word and recommended Plaintiff for a different position, "Special Agent 2" with the Gun Violence Task Force.

12. After being interviewed for the Special Agent 2 position, Malandra told Plaintiff that the only reason he may not be hired for this role is because the OAG was having internal issues hiring former PPD officers with 32 pensions. Malandra also mentioned that another former PPD officer with a 32 pension was experiencing the same issues trying to obtain a position with the OAG.

13. On July 28, 2025, Malandra called Plaintiff and informed him that he would not be offered the position, and apologetically explained that it was due to his 32 pension. Malandra offered no explanation during this phone call, or their previous conversation, as to why receiving a 32 pension would inhibit Plaintiff's ability to perform in the role to which he applied.

14. Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in hiring based on his disability on August 19, 2025.

15. On December 24, 2025, seemingly in response to his EEOC complaint, the OAG called Plaintiff and gave him a conditional offer of employment with the Gun Violence Task Force.

16. Plaintiff sat for a polygraph examination on January 21, 2026, and he was told that if the OAG had any questions regarding his background investigation, the office would be in touch.

17. Plaintiff received letter dated February 11, 2026, stating that the position was no longer being extended as a result of negative information gleaned during his background investigation. No specific information was provided as to what "negative information" led to the withdrawal.

18. Importantly, Plaintiff had only one notable disciplinary incident in his file, which had been brought to the attention of the OAG during each time Plaintiff interviewed. Plaintiff was suspended for 10 days following an overzealous vehicle pursuit when he was a rookie many years

ago.  Plaintiff mentioned this experience in every interview as an example of how he learned from a mistake, and how that mistake helped him develop into the law enforcement officer he ultimately became.  As such, the OAG was fully aware of the ancient suspension at the time the conditional offer was extended.

19.     Upon information and belief, the OAG engaged in a pattern and practice of "extending" conditional offers to individuals it had no intention of hiring due to their disability status, then finding a pretextual reason to withdraw the offer in an attempt to avoid allegations of discrimination.

20.     The OAG followed an almost identical pattern with another similarly situated individual who was a former PPD officer with a 32 pension.

21.     Plaintiff filed a second EEOC charge following the rescission of his conditional offer, alleging retaliation.

22.     Plaintiff received a Right to Sue Letter with respect to his initial charge on May 6, 2026.

23.     Plaintiff received a Right to Sue Letter with respect to the retaliation complaint on May 19, 2026.

**COUNT ONE**
**42 U.S.C. §12112(a)**
**FAILURE TO HIRE—DISABILITY**

24.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

25.     At all relevant times hereto, Defendant was an "employer" within the meaning of the ADA, 42 U.S.C. §12111(5) and was subject to the requirements of the Act.

4

26. Plaintiff is an individual who Defendant perceived to have a disability, as defined by the ADA, 42 U.S.C. §12102(1).

27. Plaintiff was at all times a "qualified individual" as defined by 42 U.S.C. §12111(8), as he was capable (with or without reasonable accommodation) to perform the essential functions of the Special Agent 2 position. Plaintiff specifically satisfied all criteria with respect to education, skills, and experience.

28. Defendant denied Plaintiff the Special Agent 2 position as a result of his disability, or as a result of their perceptions of his disability due to his 32 pension.

29. A representative of the OAG, Malandra, specifically advised Plaintiff that if he did not get the Special Agent 2 position, it was because of his 32 pension. This sentiment was reiterated again during Plaintiff's phone call with Malandra where Plaintiff learned he did not get the position.

30. To date, Plaintiff has not been provided with an alternate explanation as to why he did not receive the Special Agent 2 position.

31. Plaintiff was similarly qualified and met all the required criteria for the second position with the OAG offered on December 24, 2025; however, he was denied that position as well based on the OAG's perception of his disability.

32. Defendant's conduct constituted discrimination "on the basis of disability" in connection with job application procedures and hiring in violation of 42 U.S.C. §12112(a).

33. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress and humiliation, and other compensatory damages permitted by law.

5

34. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. §1981a.

## COUNT TWO
## 42 U.S.C. § 12203(a)
## RETALIATION

35. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

36. In response to Plaintiff's first EEOC complaint, the OAG offered Plaintiff a fictitious "conditional offer" with the intent of finding a pretextual reason to deprive Plaintiff of employment with the OAG for a second time.

37. Plaintiff was only offered a vague, ambiguous reason for this deprivation, that negative information was gleaned from his background investigation, yet the OAG was aware of the only notable incident in Plaintiff's disciplinary history at the time the offer was made.

38. Importantly, the OAG has yet to identify what "negative information" they supposedly relied upon when revoking Plaintiff's offer.

39. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress and humiliation, and other compensatory damages permitted by law.

40. Defendant acted intentionally and with malice or reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. §1981a.

## COUNT THREE
## PENNSYLVANIA HUMAN RIGHTS ACT
## DISABILITY DISCRIMINATION

41. Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

6

42.     At all relevant times hereto, Plaintiff suffered from a disability and/or was perceived by the OAG as suffering from a disability.  Neither prohibited Plaintiff fully performing the job functions of Special Agent 2, or the role conditionally offered on December 24, 2025.

43.     Plaintiff was specifically informed by Malandra, a representative of Defendant, on two separate occasions that his 32 pension would prevent him from obtaining employment with the OAG.

44.     The OAG failed to hire Plaintiff for both positions with the Gun Violence Task Force Unit due to his disability and/or perception of disability, despite the fact that he could readily perform the functions of both roles.

45.     As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress and humiliation, and other compensatory damages permitted by law.

**COUNT FOUR**
**PENNSYLVANIA HUMAN RIGHTS ACT**
**RETALIATION**

46.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

47.     In response to Plaintiff's first EEOC complaint, the OAG offered Plaintiff a fictitious "conditional offer" with the intent of finding a pretextual reason to deprive Plaintiff of employment with the OAG for a second time.

48.     Plaintiff was only offered a vague, ambiguous reason for this deprivation, that negative information was gleaned from his background investigation, yet the OAG was aware of the only notable incident in Plaintiff's disciplinary history at the time the offer was made.

49. Importantly, the OAG has yet to identify what "negative information" they supposedly relied upon when revoking Plaintiff's offer.

50. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff has suffered damages, including but not limited to lost wages and benefits, lost earning capacity, emotional distress and humiliation, and other compensatory damages permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

1. Enter judgment in favor of Plaintiff and against Defendant for violation of his rights under the ADA and the PHRA;

2. Declare that the actions of Defendant constituted unlawful discrimination;

3. Award Plaintiff compensatory damages, including, but not limited to, lost wages and benefits, lost earning capacity, emotional distress and humiliation, and other compensatory damages permitted by law.

4. Award Plaintiff punitive damages for Defendant's violations of ADA not only for the egregious nature of the wrong Defendant did to Plaintiff, but additionally to deter Defendant from such imperious conduct in the future in such amount as the Court deems proper;

5. Award Plaintiff his costs, attorneys' fees, and non-taxable expenses in this action; and

6. Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully Submitted,

Date: August 3, 2026        By:    _/s/ Kaitlin C. McCaffrey_____
                                              Kaitlin C. McCaffrey

8

I.D. No. 329960
Attorney for Plaintiff
1219 Spruce Street
Philadelphia, PA 19107
P: (215) 546-1000
F: (215) 546-8529
E: kmccaffrey@mtvlaw.com